UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THOMAS M. BECK et al.,

      Plaintiffs,

  v.                                                  Case No. 12-C-762

NEENAH JOINT SCHOOL DISTRICT,

      Defendant.

---

**DECISION AND ORDER DENYING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

---

This case arises out of a dispute between the defendant Neenah Joint School District (the District) and six of its retired administrators (Plaintiffs) over whether the District's efforts to charge Plaintiffs a percentage of the premiums for their health insurance violated the terms of their employment contracts and deprived them of property without due process of law. Plaintiffs filed their complaint in Wisconsin state court alleging violations of state and federal law. The District removed the case, asserting federal jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claim under 42 U.S.C. § 1983. The District then filed a motion for declaratory judgment which the court has construed as a motion for partial summary judgment. The District seeks a determination that its new health insurance plan, which became effective January 1, 2013, and includes several insurance options, complies with its obligations under Plaintiffs' employment contracts. For the reasons that follow, the District's motion will be denied.

## BACKGROUND

Plaintiffs are former administrators for the District. Before or during their employment, each had signed an employment contract with the District which included a provision on retirement benefits. Among the benefits provided was a continuation of their health, dental, and prescription drug coverage under the same health insurance plan that was provided to active administrators. Although there are slight differences in the specific language of each contract, the provisions generally read, in pertinent part, as follows:

> Health/Dental Prescription Drug Coverage
>
> Administrators who are eligible and elect retirement shall continue to be covered under the Health Insurance Plan (which includes Hospital, Surgical, Major Medical, Dental and Prescription drug) provided to active administrators.
>
> (A) For administrators hired prior to July 1, 1994, the Board will pay 100% of the premiums for a health/dental/prescription drug plan until the end of the month in which the administrator is eligible for Medicare.
>
> . . .
>
> Note: The plan may be changed from time to time. Retired administrators will automatically migrate to the new plan upon its approval by the Board of Education. All benefits payable under the plan shall be discontinued at the end of the month in which the retired Administrator becomes eligible for Medicare. . . .

*(See, eg.*, Holt Aff. Ex. 2, ECF No. 14-2.)

Plaintiffs were all hired prior to July 1, 1994. Each took early retirement at various times between September 2003 and March 2007. On July 1, 2006, confronted with rapidly increasing costs of health insurance for its employees, the District instituted a policy, which required all of its employees to contribute to the cost of their insurance. The policy was to be fully effective by January

2

Case 1:12-cv-00762-WCG   Filed 03/13/13   Page 2 of 12   Document 33

1, 2010, but it was to be phased in over time. District administrators were required to contribute 5% of their premium effective July 1, 2006, 10% effective July 1, 2007, and 12.6% effective July 1, 2011.

The District states that it realized it was still paying 100% of the premiums for Plaintiffs' insurance in August 2011. In August and September 2011, the District contacted Plaintiffs and notified them that they would be required to contribute 10% of the premiums for their health insurance beginning October 2011. Beginning in October 2011, the District deducted the 10% premium contribution from Plaintiffs' monthly retirement stipend checks. Although active administrators were contributing 12.6% by that time, the District viewed the 10% premium contribution as a compromise. It was also the same percentage that the only other retired administrator was contributing at the time. (*Id.* ¶¶ 7-9, ECF No. 14.)

After Plaintiffs objected to the deductions from their retirement checks, the District devised a new Health Insurance Plan, which became effective on January 1, 2013. (*Id.* Ex. 8, ECF. No. 14-8.) This new plan offers three different health plan options with varying levels of benefits and out-of-pocket expenses. One of the options, Option A, is a high-deductible health plan with lower levels of benefits. The high-deductible plan option does not require any premium contribution. Another option, Option C, is identical, or nearly identical, to the health plan that was previously offered to the Plaintiffs on retirement. However, Option C requires a premium contribution of 12.6% by its active administrators. The District also offers a fourth option, which is a health plan buy-out agreement where active employees can opt out of health coverage in exchange for a set annual dollar amount. A close look at the plan options offered to administrators indicates that the benefits are to be delivered by either United Healthcare or Network Health Plan. (*Id.* Ex. 10, ECF No. 14-10.) Thus, not only may

3

active administrators choose from a menu of plan options, they may also choose their preferred health plan provider. The current motion is directed only to the District's new plan.

**LEGAL STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

**1. Subject-Matter Jurisdiction**

Before reaching the merits of the District's motion, the court must first address whether it has jurisdiction. *See Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986) (noting that "federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction"). In the

course of its research and review of the briefs filed in support of and in opposition to the District's motion, the court became concerned over whether it had jurisdiction over the matter. It thereupon issued an order to show cause on the question, directing the parties' attention to the Seventh Circuit's decisions in *Taake v. County of Monroe*, 530 F.3d 538, 540 (7th Cir. 2008), and *Kay v. Board of Education City of Chicago*, 547 F.3d 736, 739 (7th Cir. 2008), both of which held that a mere breach of contract by a state actor does not state a due process claim. Having considered the parties' responses, the court now concludes that Plaintiffs have properly alleged a due process claim and that federal jurisdiction does exist.

Plaintiffs alleged a violation of due process under 42 U.S.C. § 1983 in their complaint. In order to state a claim under § 1983, a plaintiff must allege "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Plaintiffs allege that the District is considered a person for purposes of §1983, relying on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Plaintiffs also alleged that the District reduced the Plaintiffs' stipend checks in order to recoup the premium contribution required under the District's policy for active administrators. (Compl. ¶¶ 23-25, 31, ECF No. 1-1.) Plaintiffs base their due process claim on the fact that the District did not provide Plaintiffs with any pre-deprivation hearing prior to reducing their monthly stipends.

Because the fundamental issue in this matter is a dispute over contract interpretation, which is governed by state law, it initially appeared to the court that subject-matter jurisdiction may not exist. The Seventh Circuit has explained that just because a state actor breaches its contract with a citizen does not automatically amount to a violation of due process. *See Taake*, 530 F.3d at 541 (citing *Garcia*

5

*v. Kankakee County Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002); *Sudeikis v. Chicago Transit Auth.*, 774 F.2d 766, 770 (7th Cir. 1985)). However, if a plaintiff raises a *prima facie* claim under § 1983 that is not patently frivolous in view of prior federal court decisions, then subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 will be found. *Cf. Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007) ("[S]ome theories are such piffle that they fail even to make out claims under federal law, and these must be dismissed for want of jurisdiction." (citing *Hagans v. Lavine*, 415 U.S. 528, 538 (1974) (no jurisdiction if "prior decisions inescapably render the claims frivolous"); *Goosby v. Osser*, 409 U.S. 512 (1973); *Bailey v. Patterson*, 369 U.S. 31 (1962); *Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir. 1988))).

It appears from the Plaintiffs' complaint that they have asserted a procedural due process claim based on the allegation that the District did not provide a hearing prior to reducing their retirement checks. Instead, the District only sent a notice to Plaintiffs of its intent to begin taking deductions to cover their share of their health insurance premiums. The District offered no process to challenge its decision. The Seventh Circuit uses a two-fold analysis to determine whether a plaintiff has a procedural due process claim. First, the court must determine whether the plaintiff was deprived of a protected interest. *Leavell v. Illinois Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010). The protected interest here is the portion of the Plaintiffs' stipends that have been taken in order pay a portion of their health premiums. While Plaintiffs have clearly alleged that the deductions constitute a breach of their employment contracts, the question here is whether they may also constitute a violation of their constitutional right to procedural due process of law.

The District's unauthorized deductions from Plaintiffs' retirement checks is not in the same category as a mere breach of contract. This is not a case where a promisor simply walks away from

6

his contract, leaving the other party with the remedies of specific performance or money damages available to the promisee. The District cannot "steal the promisee's vase and say, it's mine for keeps but you can sue me for the dollar value of it." *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 709 (7th Cir. 2004). It is one thing to refuse to pay 100% of the health premiums or to change the level of benefits offered, which would constitute a straightforward breach of contract. The District, however, has gone further. Demanding the payment of a premium contribution as opposed to taking the contribution outright are two different things. Here, the District has taken the Plaintiffs' metaphorical vase without the consent of Plaintiffs, and it is this taking of property that underlies Plaintiffs' procedural due process claim.

The second determination, in terms of due process analysis, is what process is due. *Leavell*, 600 F.3d at 804. For procedural due process, "'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). "The distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). In cases where the deprivation is made "pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.* Consequently, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Hellenic*, 101 F.3d at 880. For procedural due process claims based on the "random and unauthorized" conduct of a state actor, on the other hand, "the plaintiff must either avail herself of state post-

7

deprivation remedies 'or demonstrate that the available remedies are inadequate.'" *Leavell*, 600 F.3d at 805 (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996)).

From the face of the Plaintiffs' complaint, it is clear that the District's decision to deduct 10% of the premium for their insurance from Plaintiffs' retirement checks cannot be categorized as random and unauthorized. Then Judge Sotomayor, writing for the Second Circuit, explained that "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to state law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." *Rivera-Powell*, 470 F.3d at 465-66 (quoting *Velez v. Levy*, 401 F.3d 75, 91-92 & nn. 14 & 15 (2d Cir. 2005)).

Plaintiffs have alleged in this case that the decision to deduct a portion of their retirement benefit was made by the District. Given that the District is a state actor that has intentionally exercised its authority and the deprivation here was pursuant to the District's policy, Plaintiffs have stated a due process claim under the Fourteenth Amendment. At least the court cannot say that the claim is patently frivolous so as to deprive the court of subject matter jurisdiction. *Cf. Goros*, 489 F.3d at 860 (dismissing for lack of jurisdiction rather than failure to state a claim due to the fact that plaintiffs "lack a serious claim"). Accordingly, the court has subject matter jurisdiction over Plaintiffs' § 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). It will therefore proceed to the merits of the District's motion.

**2. Contract Interpretation**

As noted, Plaintiffs' employment contracts provided a number of retirement benefits, including the right to continue their health insurance with the District with the Board paying 100% of the premiums until they became eligible for Medicare. The contracts expressly noted, however, that the

8

plan was subject to change. A key issue here is whether the change allowed under the contract authorized the District to begin charging the Plaintiffs for their insurance. The District contends that the contract is ambiguous as to this issue and a factual record will be needed to resolve the ambiguity. Consequently, the District does not seek summary judgment on Plaintiffs' claim that the District's decision to deduct from their retirement checks the 10% premium contribution constituted a breach of their employment contracts and also a violation of their right to due process. Instead, the District's current motion is directed to the issue of whether the District's new plan that became effective January 1, 2013, also constitutes a breach of the Plaintiffs' employment contracts.

Remember, under its new plan the District is offering three different health insurance options. Although the District pays 100% of the premium for one of the options, Option A, the deductibles that the insureds under that policy are required to pay are substantial: $2,500 for a single plan and $5,600 for a family plan. Another option, Option C, provides coverage that is almost identical to the coverage that Plaintiffs had under the previous plans. In order to elect Option C, however, Plaintiffs must agree to pay 12.6% of the monthly premium. Because Option A requires no premium payment, the District contends that its new offering is allowed under the contract. Plaintiffs disagree.

The dispute between the parties is an issue of contract interpretation that is governed here by Wisconsin law. Under Wisconsin law, the primary goal in interpreting a contract is to determine, and give effect to, the parties' intentions. *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 456 N.W.2d 359, 362 (1990). If the contractual language is unambiguous, a court is to construe the contract according to its literal terms, *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 577 N.W.2d 617, 623 (1998), giving the terms their plain and ordinary meaning, *Huml v. Vlazny*, 2006 WI 87, 293 Wis. 2d 169, 716 N.W. 2d 807, 820 (2006). If the contractual language is ambiguous, that is,

9

if it may reasonably be construed to have more than one meaning, any ambiguity is to be construed against the drafter. *Jones v. Jenkins*, 88 Wis. 2d 712, 277 N.W.2d 815, 819 (1979). Whether a contract is ambiguous is a question of law. *Frost ex rel. Anderson v. Whitbeck*, 257 Wis. 2d 80, 654 N.W.2d 225, 230 (2002).

The parties agree that the retirees' employment contracts do not define the term "plan." The District maintains that the term "plan" unambiguously includes deductibles, co-pays, and benefits, and also includes, though ambiguously, premiums. Furthermore, the District argues that its new "zero premium contribution option," or Option A, "reflects what Plaintiffs have asserted is their contractual right: the right to receive health insurance with no premium contribution." (Dist. Br. in Supp. 6.) In effect, the District contends that by providing a no-premium contribution option to Plaintiffs, it has satisfied its contractual obligations. Plaintiffs contend that the term "plan" is ambiguous in all respects and actually was only intended to permit the District to change the health plan provider, not the health plan premiums, benefits, deductibles, or co-pays.

Regardless of what the term "plan" includes, however, what seems clear from the parties' contracts is that the District agreed that administrators who retired would be entitled to participate in the same "Health Insurance Plan" that was offered to active administrators, and that the Board would pay 100% of the premiums for those administrators who were hired before July 1, 1994, as each of the Plaintiffs was. In other words, under their employment contracts, Plaintiffs were guaranteed the same coverage as active administrators were offered at no premium cost to them until they were Medicare eligible. But under the District's new Health Insurance Plan, Plaintiffs' right to have the District pay their premiums is sharply limited. Active administrators have the right to choose any of several options. Plaintiffs likewise have the right to choose any of the options, but only Option A is premium-

10

free.  This would appear to be a material variance in what the District promised in the employment contracts.

In support of its position, the District relies primarily on *Hussey v. Milwaukee County*, Case No. 12-C-73, 2012 WL 5353585 (E.D. Wis. Oct. 29, 2012).  In *Hussey*, a retired Milwaukee County employee brought an action seeking injunctive relief to stop the County from altering the level of benefits she received, increasing her out-of-pocket costs, and charging her a premium contribution. *Id.* at *3.  When she retired, Hussey received a booklet stating that a "retiree may participate in the health plan in which he/she is currently enrolled on the same basis as coverage provided to the active employee group.  The County will make the full premium contribution on behalf of the retiree." *Id.* at *2.  Although the County conceded that it was obligated to pay Hussey's premiums, it argued that it did not have a similar obligation to provide cost-free insurance.  In other words, the County claimed that it had never promised that retirees would not have to pay co-pays, co-insurance, or deductibles. The *Hussey* court agreed holding that the Milwaukee County ordinances on which the defendant's obligations arose only required the defendant to pay the monthly premiums for insurance coverage. *Id.* at *5.

*Hussey* is inapposite to this case.  The plaintiff in that case did not claim that the County had denied her the same insurance plan that active employees were provided.  There, the County increased co-pays, co-insurance, and deductibles for all of its active employees and plaintiff was offered the same plan premium-free. *Id*.  Here, by contrast, active administrators are offered an option under the District Health Insurance Plan that Plaintiffs are denied unless they pay the same premium that active administrators pay.  That does not appear to be what they agreed to in their employment contracts.

11

From the foregoing, it follows that the District is not entitled to summary judgment on its claim that its refusal to pay Plaintiffs' premiums on any but one of the options in its new Health Insurance Plan is not a breach of the Plaintiffs' employment contracts. Indeed, from the analysis set forth above, summary judgment in Plaintiffs' favor would seem more appropriate on both their due process and breach of contract claims. It is not clear what extrinsic evidence could be offered to alter the District's clear and seemingly unambiguous promise that Plaintiffs would be allowed to continue their insurance coverage under the same Health Insurance Plan provided to active administrators and that the District it would pay 100% of their premiums until they were Medicare eligible. Plaintiffs have not yet moved for summary judgment, however, and little or no discovery has been done, primarily due to the District's early filing of its motion and the jurisdictional question the court raised. It may be that other evidence exists of which the court is unaware that casts doubt on the meaning of the contract. Of course, such evidence is only relevant if the terms of the agreement are ambiguous. In any event, for the reasons set forth above, the District's motion for declaratory relief (ECF No. 11) is denied.

**SO ORDERED** this __13th__ day of March, 2013.

                                                 s/ William C. Griesbach
                                                 William C. Griesbach, Chief Judge
                                                 United States District Court